THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE SPENCER, Defendant-Appellant.

(No. 54759; ▮▮▮▮▮)

First District—January 21, 1971.

Thomas P. Humphrey and Kermit Coleman, both of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (George Elsner, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

George Spencer, a Chicago school teacher, was assigned to Englewood High School. On May 6, 1969, the principal of the school presented him with a letter of dismissal and directed him to leave the school and report to the Bureau of Teacher Personnel, Board of Education. Spencer, who was seated at his desk, did not rise. After repeated warnings he was ar-

rested, removed from his chair and escorted from the building. He was charged with criminal trespass to land, tried without a jury, found guilty and fined $25.00.

The statute under which Spencer was convicted recites: "Whoever enters upon the land or any part thereof of another, after receiving, immediately prior to such entry, notice from the owner or occupant that such entry is forbidden, or remains upon the land of another after receiving notice from the owner or occupant to depart, shall be fined not to exceed $100 or imprisoned in a penal institution other than the penitentiary not to exceed 10 days." Ill. Rev. Stat. 1967, ch. 38, par. 21—3(a).

The defendant's basic contention is that this statute refers only to one class of offenders—to interlopers who enter upon someone's premises after being notified not to do so or who, not having received notice before entering, stay there after being told to leave. He argues that the statute applies to those who intrude upon premises and not to those who enter lawfully. Specifically, he argues that the statute has no application to an employee whose work requires him to be on the premises and who is discharged while at work.

■■■ Although the statute could have been more precisely phrased, it is not ambiguous. The legislative intention seems clear. In construing a criminal statute the legislative intention must be ascertained by examining the language employed, the evil to be remedied and the objective sought to be accomplished. *People v. Gill*, 30 Ill.App.2d 32, 173 N.E.2d 568 (1961). It is to be presumed that the legislature intended words to have their ordinary meaning unless a statutory definition indicates a contrary intention. *People v. LaPorte*, 28 Ill.App.2d 139, 171 N.E.2d 95 (1960). The word "or" between the first part of the statute and the last: "Whoever enters upon the land * * * or remains upon the land * * *," must be accorded significance. Whenever this disjunctive is used in a sentence the parts of the sentence are to be taken separately. *People v. Vraniak*, 5 Ill.2d 384, 125 N.E.2d 513 (1955). The legislative intent becomes plain when the word "whoever," obviously understood but not used, is inserted after the "or." The statute, with the ellipsis supplied, would then read: "Whoever enters upon the land * * * or whoever remains upon the land. * * *" A word or words inadvertently omitted in a statute may be supplied to effectuate the legislative purpose. *People v. Anderson*, 398 Ill. 480, 76 N.E.2d 773 (1947); *Secco v. Chicago Transit Authority*, 2 Ill.App.2d 239, 119 N.E.2d 471 (1954).

The purpose of the legislature was to create two distinct offenses: the first, to enter upon the land of another despite a warning that entry is

forbidden and, the second, to remain on the land of another after being notified to depart. The first offense is directed to interlopers, the second is not. The second makes any individual a trespasser who stays on the premises of another after receiving notice from the owner or occupant to leave.

■■ Spencer was told to leave Englewood High School by the principal of the school who had legal authority to give such notice. By his non-compliance he falls within the purview of the statute.

The cases of *People v. Miller*, 344 Ill.App. 574, 101 N.E.2d 874 (1951) and *People v. Goduto*, 21 Ill.2d 605, 174 N.E.2d 385 (1961) cited in the defendant's brief, do not dictate a contrary result. They were decided under the statute which preceded the present one:

"Whoever  *  *  *  is unlawfully upon the  *  *  *  land of another and is notified to depart therefrom by the owner or occupant  *  *  *  and neglects or refuses so to do  *  *  *  shall be guilty of a misdemeanor  *  *  *.'' Ill. Rev. Stat. 1957, ch. 38, par. 565.

In *Miller*, the defendant entered upon land to which he claimed ownership; the party who ordered him off also claimed ownership. The reviewing court held that it was not proved beyond a reasonable doubt that either the defendant was unlawfully on the land or that the person who ordered him off had the right of possession. In *Goduto*, non-employee representatives of a union entered the parking lot of a retail store for the purpose of distributing leaflets and questionnaires to employees of the store. They were informed that the company did not permit soliciting on its property and were asked to leave. Upon their repeated refusal to do so, the police were summoned and they were arrested. Of the many issues before the reviewing court only one has relevancy to the present case. This was the defendant's contention that unlawful entry was the essence of the crime and that their entry into the parking lot was lawful. In affirming the conviction the court stated that the defendants were not charged with, or convicted of, unlawfully remaining upon the land after they had been ordered to depart. The court held that this was a criminal offense.

This is the first time the present statute has been construed by an Illinois reviewing court. However, courts of other states have considered similar enactments and have reached conclusions identical with ours. In *State v. Carriker*, 5 Ohio App.2d 255, 214 N.E.2d 809 (1964), the court reviewed a statute which made the unlawful entry onto the land of another or the refusal, without lawful authority, to depart after notice, a criminal offense. The defendant contended that unlawful entry was indispensable to a conviction; that the status of a business invitee could not be changed to that of a trespasser. In disagreeing with this

contention, the court asked, "is a businessman helpless against the will of a customer who refuses to leave his store after closing hours?" The court held that the statute "not only provides that the entry upon the premises without lawful authority is an offense, but it also provides that remaining upon the premises of another without legal authority after being notified to leave is a misdemeanor." In *People v. Johnson*, 16 Mich.App. 745, 168 N.W.2d 913 (1969), the court interpreted a trespass statute not unlike those of Illinois and Ohio. The court after pointing out (as did this court in *People v. Miller, supra*) that the criminal statute was inapplicable in cases involving questions of title, right to possession or disputes between landlord and tenant, held that the requisite intent, required for conviction under the failure-to-depart portion of the statute, was established by the defendants remaining on the land of another without lawful authority upon being requested to depart. The court affirmed the conviction of the defendants who had stayed in a building after being told to leave.

The defendant's next contention is that an employee who is dismissed from his job and ordered to leave his employer's premises cannot be convicted of criminal trespass unless he has been given advance notice and allowed a reasonable time to gather his belongings. This contention is based upon his testimony that he was ordered to leave the school immediately and that he was refused time to collect his personal possessions. He argues that this was an unreasonable demand and an unreasonable denial of a right that was his as a long-standing employee.

■■ The type of notice required and the time allowed for departure of one who has been requested to leave the premises of another would depend upon the facts of each case. Summary notice and immediate departure might be appropriate in one set of circumstances but unreasonable in another. Much would depend upon the past relationship of the parties and the attitude of the person ordered out. Unless the person is an intruder, or is resistant, hostile or trouble-making, he should be permitted sufficient time to assemble his personal effects. Both phases of this rule would apply to an instructor who taught in the same school for nearly two years. He should be allowed a reasonable time to vacate unless his non-cooperative attitude justifies firm and prompt action.

The State's evidence showed that Spencer's attitude was antagonistic; he resisted the order to leave and had to be ejected. Moreover, the evidence suggests that there had been trouble with Spencer and that the notice of his dismissal and the request that he immediately report to the offices of the Board of Education did not take him by surprise. The order was handed to him in writing shortly after 8:00 A.M. by Norman Silber, the school principal, in the presence of the district superintendent of

schools, the commanding officer of the local police district and two police officers. The contents of the written order were repeated orally three times. Spencer made no verbal or physical response; he remained seated at his desk. He was warned that if he did not leave he would be placed under arrest. The commanding officer, Harold Miles, testified the Spencer then stated that there would be "dire circumstances" if he was arrested. Miles repeated over and over that Spencer would have to leave or be subject to arrest. Spencer did not move from his chair and gave no indication that he would comply with the order. He was then placed under arrest. Miles testified that Spencer was asked whether he would go peacefully and he replied that the police would have to take him. Thereupon, the two policeman lifted him from his chair, placed handcuffs on him and removed him from the classroom. The witnesses for the prosecution estimated that the entire incident took from five to fifteen minutes; the defendant estimated that it took four minutes.

Spencer denied that he refused to leave. He testified that he remembered no discussion with the police officers. He said that after he was lifted out of his chair he asked time to gather his possessions but that there was no response to his request. This was rebutted by Commander Miles who testified that he asked the defendant whether he had any personal effects and he replied that he had only a few papers, which Miles gathered together and later gave him.

■■ The trial court accepted the State's version of the occurrence and concluded that there was "unconditional refusal to leave." This was not a finding that Spencer was willing to leave upon the condition that he receive time to collect his belongings; it was a finding that there was a flat refusal to depart. The court rightly framed the issues in terms of unconditional refusal to depart after notice to do so. The evidence sustains the court's judgment.

■■■ In the defendant's reply brief an issue is raised for the first time: that in view of the conflicting testimony whether he was given reasonable time to gather his possessions, the court had the duty to pronounce a specific finding on that question. New issues cannot be raised in a reply brief. Ill. Rev. Stat. 1967, ch. 110, par. 341(g). Furthermore, the contention is not meritorious. A trial court draws factual conclusions from conflicting testimony but need not specify each fact considered in making its decision.

The judgment is affirmed.

McNAMARA, P. J., and SCHWARTZ, J., concur.