**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Don Edward GRIMES, Defendant-Appellant.**

**No. 16874.**

United States Court of Appeals Seventh Circuit.

July 25, 1969.

Robert S. Bailey, Chicago, Ill., for appellant.

Carl W. Feickert, U. S. Atty., East St. Louis, Ill., Thomas A. Foran, U. S. Atty., Chicago, Ill., John Peter Lulinski, Michael B. Nash, William T. Huyck, Asst. U. S. Attys., of counsel, for appellee.

Before HASTINGS, Senior Circuit Judge, and FAIRCHILD and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge. .

Defendant was indicted for assaulting Harry W. Shea, an employee of the Federal Penitentiary in Marion, Illinois, where defendant was serving a sentence for a Dyer Act offense. The indictment was under Sections 111 and 1114 of the Criminal Code (18 U.S.C. §§ 111 and 1114). The jury returned a guilty verdict, resulting in the imposition of a three-year sentence to be served consecutively with the Dyer Act sentence.

During the evening of January 27, 1967, defendant and another inmate, James Reid,[1] were brought to the office of the Correctional Supervisor during an investigation of an altercation. Grimes was sitting outside the Supervisor's office when Reid came out in the custody of Officers Meadows and Bowers and informed Grimes that he had been ordered to the segregation unit. The three were proceeding down the corridor when a struggle broke out. According to defendant and Reid, Officer Meadows grabbed Reid's arm and twisted it behind his back whereupon Reid struck Meadows.[2] Two other inmates corroborated defendant's and Reid's testimony that the officers, now joined by several others, threw Reid to the ground and were beating him on the head with long flashlights. At this point Grimes ran to Reid's aid. According to defendant's testimony he knocked a flashlight out of Officer Shea's hand and pulled him away from Reid by the shoulder. On the other hand, Shea testified that he was hit in the mouth by Grimes. Bowers and Meadows did not testify at Grimes' trial. In rebuttal, the trial judge permitted FBI agents Grace and Stewart to testify concerning the oral statement defendant gave them after this incident, acknowledging that in going to Reid's assistance, he had "grabbed onto an officer's shoulder and turned him around, and then * * * blanked out" and could not remember whether he struck an officer.

Upon appeal, defendant claims that the district court should have instructed the jury that he could not be found guilty if he were justifiably using reasonable force in defense of Reid. He also contends that the district court should not have admitted his post-arrest statement without conducting a hearing outside the jury's presence in order to make a preliminary determination of voluntariness. We hold that a new trial is necessary.

In pertinent part, Section 111 of the Criminal Code provides:

"Whoever forcibly assaults * * * any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both."

In turn, Section 1114 of the Criminal Code designates among others "any officer or employee of any United States penal or correctional institution."

Asserting that the use of reasonable force in defense of another is a complete defense to a charge of assaulting a federal officer under Section 111 of the Criminal Code, the defendant insists that he was entitled to such an instruction. In particular, the district court refused the following two instructions tendered by defendant:

"DEFENDANT'S REQUESTED INSTRUCTION NO. 1

"You are instructed that if you believe from the evidence in this case

---

1. Reid was convicted of violating the same provisions of the Criminal Code, but his case was remanded for a new trial. United States v. Reid, 410 F.2d 1223 (7th Cir. 1969). .

2. At Reid's trial, he and Grimes testified to similar effect. On the other hand, three prison guards testified that Reid's assault was unprovoked.

that the defendant, Don Edward Grimes, was induced by the circumstances of seeing his friend and companion, James Reid, being mistreated and assaulted by the officers of the penitentiary and other valid evidence sufficient to induce an ordinary person to run to the defense of the said James Reid and that in the absence of such circumstances the defendant never would have been guilty of any assault, but that he was only going to the protection of his companion, the said James Reid, then you should find the defendant not guilty."

## "DEFENDANT'S REQUESTED INSTRUCTION NO. 3

"The Court instructs the jury that if you believe from the evidence in this case that the guards and other official personnel of the penitentiary were, while not in the discharge of their official duties, beating and striking James Reid, friend and companion of the defendant, Don Edward Grimes, in the presence of the defendant, and in such a manner as to induce in the mind of the defendant a reasonable, well-founded basis that his friend and companion was actually in danger of receiving great bodily injury and that in an attempt to defend his friend and companion and to prevent his friend and companion from receiving great bodily injury, the defendant, Don Edward Grimes, did resist the beating and assault upon the person of his friend then, in such case, you should find the defendant not guilty."

Defendant does not contend that these instructions should have been given *in haec verba*, but he does contend that some instruction on this defense was essential. We agree.

We start with the proposition that the defendant in a criminal case is entitled to have the jury consider any theory of the defense which is supported by law and which has some foundation in the evidence, however tenuous. Tatum v. United States, 88 U.S.App.D.C. 386, 190 F.2d 612, 617 (D.C. Cir. 1951); United States v. Phillips, 217 F.2d 435, 442–443 (7th Cir. 1954). There is no question that the evidence in the present case raised a jury question as to the cause of the fight between Reid and the guards and Grimes' motivation in intervening in the struggle. The issue then becomes whether federal law provides a defense to a prosecution under Section 111 for the use of reasonable force to defend another from an unprovoked assault by a federal officer.[3]

In Reid's prosecution (note 1, *supra*) the same trial judge instructed the jury without objection by the Government that under Section 111, "the law of self-defense is a good and legal defense and is the law of the land, and if, after carefully considering all the testimony in this case, the jury believes that the defendant, James Lewis Reid, acted as an ordinary man would act, under the same or similar circumstances, you may return a verdict of not guilty." Cf. Barrett v. United States, 82 F.2d 528, 532 (7th Cir. 1936); United States v. Stahls, 194 F. Supp. 849, 851–852 (S.D.Ind.1961). The gravamen of the crime with which Grimes and Reid were charged is "assault," a legal term of art. In interpreting the meaning of this common law term, the federal courts have resorted to common law precedents. Cf. Guarro v. United States, 99 U.S.App.D.C. 97, 237 F.2d 578, 580 (1956). In this way common law defenses to prosecutions for assault have been recognized despite their absence in federal statutory law. *E.g.*, United States v. Angelet, 231 F.2d 190, 193 (2d Cir. 1956) (right to resist unlawful arrest),[4] certiorari denied, 351 U.S. 952, 76 S.Ct. 849, 100 L.Ed. 1476; United States v. McCarthy, 249 F.Supp. 199, 202

---

3. We are not here concerned with the different policy questions raised by the defense of resisting an unlawful arrest. See United States v. Simon, 409 F.2d 474 (7th Cir. 1969); United States v.

Heliczer, 373 F.2d 241, 246, note 3 (2d Cir. 1967).

4. But see United States v. Heliczer, 373 F.2d 241, 246, note 3 (2d Cir. 1967).

(E.D.N.Y.1966) (right to resist unlawful arrest); Arwood v. United States, 134 F.2d 1007, 1011 (6th Cir. 1943) (provocation); Barrett v. United States, 82 F.2d 528, 532 (7th Cir. 1936) (self-defense).

■ At common law, the reasonable use of force in defense of another was generally a defense to a charge of assault. 6 Am.Jur.2d, Assault and Battery, § 63; 6 C.J.S. Assault and Battery § 93. Subject to limitations, the Model Penal Code also permits the use of force to protect a third person under circumstances in which one would be privileged to use force in his own defense. A.L.I. Model Penal Code § 3.05 (Proposed Official Draft 1962). In United States v. Heliczer, 373 F.2d 241, 249 (2d Cir. 1967), the court noted in passing that under some circumstances intervention by a third party to prevent grievous bodily harm to another from what reasonably appears to be an unprovoked assault may not subject the intervenor to liability for violation of Section 111.

■ Defendant concedes he would have no defense if the prison employees were attempting to subdue Reid after he assaulted them without provocation. Nor does defendant assert a privilege to intervene in behalf of one who merely questions the authority of the prison guards to place him in solitary confinement or carry out any other order. See United States v. Reid, 410 F.2d 1223, 1226 (7th Cir. 1969). Here the sole question is whether defendant was privileged to intervene in defense of one whom he reasonably thought to be the victim of an unauthorized and unprovoked physical assault by prison officials to the same extent that the victim of the alleged assault was privileged to defend himself.[5] We conclude that in these limited circum-

stances Grimes had the privilege of intervening in Reid's behalf and that he was entitled to have the jury consider this defense. We perceive no serious threat to prison discipline from a defense which merely protects inmates from unauthorized physical abuse by overzealous officials. Our decision in no way limits the power of prison officials to restrain or subdue unruly inmates, to carry out all reasonable orders necessary for the maintenance of prison discipline, or to cope with attempted assaults or escapes by prison inmates. See A.L.I. Model Penal Code §§ 3.07, 3.08 (Proposed Official Draft 1962). The Government's concern that recognition of this limited defense will emasculate Section 111 is belied by the fact that since 1905, when this statute was originally enacted, this is apparently the first such case.

■ In the event of a retrial of this case on remand, the jury should be instructed that Grimes was privileged to use reasonable force in the defense of Reid if he reasonably believed that Reid was being subjected to an unprovoked physical assault by the prison guards.[6]

■ As to the Government's rebuttal use of defendant's statement to the FBI agents, defendant made no objection when this evidence was finally introduced. Cf. United States v. Nielsen, 392 F.2d 849, 852 (7th Cir. 1968). However, if an appropriate request is made at the retrial, the district court should hold a *voir dire* hearing for an initial resolution of the voluntariness of the statement, in accordance with Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908

Defendant was ably represented by Robert S. Bailey of the Illinois Bar serving as appointed counsel in this Court. We commend Mr. Bailey for his services.

Reversed and remanded.

---

5. No question of the reasonableness of the force employed by defendant is presented here.

6. We are unpersuaded by the Government's suggestion that because the trial judge read the jury a supplementary instruction as to the definition of the word "wilfully"

Grimes was not prejudiced by the refusal of his tendered instructions. The casual reference to "good faith" in that instruction could not adequately alert the jury to the fact that if his story were believed Grimes was privileged to use force in Reid's defense.